# In the United States Court of Federal Claims

No. 21-1817C
Filed: January 24, 2022
NOT FOR PUBLICATION*

| |
|---|
| **G4S SECURE INTEGRATION LLC, et al.,** <br><br>        *Plaintiffs*, <br><br>v. <br><br>**UNITED STATES,** <br><br>        *Defendant*, <br><br>and <br><br>**CGS-ORSA SECURITY LLC,** <br><br>        *Defendant-Intervenor.* |

*Gerald H. Werfel*, Baker Cronogue Tolle & Werfel LLP, McLean, VA, for the plaintiff.

*Daniel A. Hoffman*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant, with *John W. Cox*, Office of the Legal Adviser, U.S. Department of State, of counsel.

*Robert Nichols*, Nichols Liu LLP, Washington, DC, for the defendant-intervenor, with *Andrew Victor*, of counsel.

### MEMORANDUM OPINION

***HERTLING*, Judge**

      In this post-award bid protest, the plaintiffs challenge a contract award issued by the U.S. Department of State ("State") for security services for the U.S. Embassy in Luanda, Angola. The

---

\* Pursuant to the protective order in this case, the Court initially filed this opinion under seal on January 12, 2022 and directed the parties to propose redactions of confidential or proprietary information by January 26, 2022. (ECF 37.) The parties notified the Court that they have no redactions to propose. (ECF 41.) Accordingly, the Court hereby releases in full the memorandum opinion of January 12, 2022.

plaintiffs submitted a proposal as a joint venture comprised of G4S Secure Integration, LLC; G4S Secure Solutions International, Inc.; and G4S Serviços de Segurança Angola, LDA.  State ultimately awarded the contract to the defendant-intervenor, CGS-ORSA, a joint venture comprised of Continuity Global Solutions, LLC ("CGS") and Omega Risk Solutions Angola ("ORSA").

The plaintiffs contend that CGS-ORSA's offer was deficient in four respects: first, CGS-ORSA did not comply with a requirement of the Federal Acquisition Regulations ("FAR") that was incorporated into the solicitation because it was not registered in the System for Award Management ("SAM") at the time it submitted its offer; second, the Dun & Bradstreet Data Universal Numbering System (or "DUNS") number used for CGS-ORSA was assigned instead to the individual owner of CGS, thereby violating the solicitation's prohibition on subcontracting; third, CGS-ORSA did not qualify for the price preference available by law to U.S. persons; and finally, fourth, the proposal did not include a valid joint venture.  As discussed during oral argument, these claims are largely premised on whether CGS-ORSA was properly registered in SAM at the time it submitted its offer.

The Court accepts the plaintiffs' argument that CGS-ORSA failed to fulfill the requirements of FAR 52.204-7.  The Court finds, however, that the plaintiffs have not met their burden of demonstrating prejudice on the merits.  Accordingly, the award is upheld.  The plaintiffs' motion for judgment on the administrative record is denied, and the motions of the defendant and defendant-intervenor for judgment on the administrative record are granted.

## I. BACKGROUND[1]

### A. Terms of the Solicitation

State issued Solicitation No. 19AQMM21R0059 (the "Solicitation") for security services at the U.S. Embassy in Luanda, Angola.  (AR 648, 656.[2])  The Solicitation followed negotiated-procurement procedures.  (AR 1.)  State contemplated awarding a time-and-materials contract for one base year and four one-year option periods to the "responsive responsible offeror" with the lowest priced, technically acceptable offer.  (AR 668, 747.)  Offers were due on April 23, 2021.  (AR 726).

The first page of the solicitation required an offeror to enter its name, address, and DUNS number.  (AR 1.)  The Solicitation provided that a "prospective offeror may be a sole proprietorship, a formal joint venture in which the co-venturers have reduced their agreement to

---

[1] The summary of the background to this action contains findings of fact based on the administrative record.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).

[2] Citations to the administrative record (ECF 20-1, 20-2, 20-3) are cited as "AR" with the pagination reflected in that record as filed with the court.

writing, or a de facto joint venture with no written agreement." (AR 718.) Another part of the Solicitation required joint-venture offerors to put their agreements in writing:

> Joint venture offerors shall include a copy of the Joint Venture Agreement signed by officials authorized to bind the individual companies comprising the Joint Venture. Provide a statement that each part to the Joint Venture shall be jointly and severally liable for the performance of the joint venture and that each party is also jointly and severally liable for all matters arising out of or related to the performance of the contract.

(AR 731.)

The Solicitation conditioned a proposal's eligibility on its meeting certain requirements: "To be eligible for evaluation, proposals must meet all the requirements stated in the solicitation . . . . Failure to furnish current and complete information may cause a proposal to be determined unacceptable." (AR 529, 747.) Nonetheless, State reserved the right to "waive informalities and minor irregularities in offers received." (*Id.*)

The Solicitation expressly incorporated several provisions of the FAR, including FAR 52.204-7, "System for Award Management." (AR 687.) The SAM is a government database that maintains information on prospective and actual awardees of federal contracts. FAR 52.204-13(a).

FAR 52.204-7(b)(1) (emphasis added) provides: "An offeror is required to be registered in SAM *when submitting an offer* or quotation, and shall continue to be registered until time of award, during performance, and through final payment of any contract, basic agreement, basic ordering agreement, or blanket purchasing agreement resulting from this Solicitation."

An offeror has registered in SAM when:

> (1) The Offeror has entered all mandatory information, including the unique entity identifier . . . into SAM;
>
> (2) The offeror has completed the Core, Assertions, and Representations and Certifications, and Points of Contact sections of the registration in SAM;
>
> (3) The Government has validated all mandatory data fields . . . ; and
>
> (4) The Government has marked the record "Active".

3

FAR 52.204-7(a).

SAM currently uses DUNS numbers generated by Dun & Bradstreet as its unique entity identifiers.

The Solicitation also incorporated FAR 52.215-1, which allows offerors to "correct a mistake at any time before award."  (AR 725.)

The Solicitation provided that "all JV partners must be registered in SAM.gov."  (AR 728.)  On the joint venture signature page, the solicitation asked offerors to check a box indicating whether the joint venture itself was registered in SAM and to check other boxes indicating whether the joint-venture entities were registered in SAM.  (AR 163-64.)

### B.     Contract Award

State received five proposals in response to the Solicitation.  A Technical Evaluation Panel ("TEP") determined that one proposal was submitted late, a second was non-responsive, and a third was technically unacceptable.  (AR 2728.)   The TEP established a competitive range with the remaining two offerors, G4S and CGS-ORSA, and conducted discussions with them. (AR 2731.)  The TEP ultimately found both G4S's and CGS-ORSA's proposals to be technically acceptable.  (*Id.*)  Another evaluation team determined that both CGS-ORSA and G4S were eligible for a ten-percent price reduction for U.S. persons in the evaluation process.  (AR 2732.)  After this reduction was applied, CGS-ORSA's proposal price was eight percent lower than G4S's proposal price.  (AR 2733.)  Because CGS-ORSA's proposal was less expensive, the TEP recommended awarding the contract to CGS-ORSA.  (AR 2734.)

In CGS-ORSA's proposal, the individual completing the form on behalf of CGS-ORSA wrote that the name of the offeror was "CGS-Omega Risk Solutions Angola (ORSA) Security Joint Venture" and represented that the DUNS number for the joint venture was 117974155. (AR 752.)  On the signature page of its offer, CGS-ORSA noted that its SAM Registration was "In Process."  (AR 753.)  Elsewhere in its proposal, however, CGS-ORSA asserted that it "is a registered business entity in SAM under DUNS number 117974155."  (AR 795.)  CGS and ORSA each maintained separate registrations in SAM unassociated with DUNS number 117974155.[3]  (AR 753-54.)

On June 25, 2021, the State contracting officer sent a request for a pre-award survey to CGS-ORSA.  (AR 2899.)  The contracting officer noted that the "[s]tatus of SAM.gov DUNS 117974155 registration for CGS-ORSA Security JV, as of June 24, 2021, . . . is incomplete."

---

[3] The plaintiffs dispute that ORSA was itself registered in SAM at the time that CGS-ORSA submitted its offer. (ECF 21 at 32.)  The defendant has countered that security settings prevented the plaintiffs from being able to find ORSA's registration. (ECF 23 at 8 n.7.)  The defendant has also submitted an exhibit showing that ORSA has been actively registered in SAM since March 19, 2021 (ECF 27-2), which precedes the due date for offers of April 23, 2021 (AR 726). Accordingly, the Court finds that ORSA was registered in SAM at the time that CGS-ORSA submitted its offer.

(*Id.*)  The contracting officer requested that CGS-ORSA "provide[ ] the necessary documentation to ensure that the DUNS is registered in SAM.gov by July 8, 2021 1:00 PM EST." (*Id.*)  An attachment to the contracting officer's email showed that the SAM registration associated with DUNS number 117974155 was "Work in Progress," (*i.e.*, not active) as of June 24, 2021.  (AR 2895-96.)  The attachment also identified the company name associated with DUNS number 117974155 as the name of CGS's CEO and advised that "an incorrect or incomplete Legal Business Name" had been detected during processing.  (*Id.*)

CGS-ORSA promptly responded to the contracting officer that the listing "was a mistake in SAM.gov" and that it had reached out to correct the error.  (AR 2905.)  On July 9, 2021, CGS-ORSA emailed the State contracting officer to inform her that the DUNS and SAM registration had been updated and completed.  (AR 2904.)  An attachment to that email showed that DUNS number 117974155 was then assigned to "CGS-ORSA Security LLC," and the associated SAM registration was active.  (AR 2909.)

On August 19, the contracting officer informed CGS-ORSA that its proposal had been selected for award.  (AR 2739.)

        **C.**      **The Plaintiffs' Proposal**

The plaintiffs did not create a separate legal entity for their joint venture.  (ECF 26 at 4.)  Rather, the plaintiffs submitted a proposal with three offerors: G4S Secure Integration, LLC; G4S Secure Solutions International, Inc.; and G4S Serviços de Segurança Angola, LDA.  (AR 1198.)  The plaintiffs entered into a joint venture agreement establishing that G4S Secure Integration, LLC, would own 51% of the assets of the joint venture; G4S Secure Solutions Integration, Inc. would own 25% of the assets of the joint venture; and G4S Serviços de Segurança Angola, LDA would own 24% of the assets of the joint venture.  (AR 1238.)  The plaintiffs never registered their joint venture in SAM.

        **D.**      **Procedural History**

The plaintiffs filed suit in this court on September 7, 2021.  (ECF 1.)  On October 12, 2021, the plaintiffs moved for judgment on the administrative record.  (ECF 21.)  The defendant and defendant-intervenor cross-moved for judgment on the administrative record and responded to the plaintiffs' motion on November 1, 2021.  (ECF 23, 24.)  All parties filed reply briefs.  (ECF 26, 27, 28.)  The Court heard oral argument on December 16, 2021.  On December 21, 2021, the Court issued an order requesting supplemental briefing from the plaintiffs.  (ECF 31.)  The plaintiffs filed a supplemental brief on December 30, 2021.  (ECF 32.)

On January 12, 2022, the Court held a telephonic status conference, during which the Court issued an oral ruling on the pending motions.

## II.    JURISDICTION AND STANDING

As a preliminary matter, the Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1491(b)(1), which grants the Court of Federal Claims jurisdiction over claims brought by an "interested party" regarding "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  Because the plaintiffs allege that the defendant and

5

defendant-intervenor violated federal-procurement regulations, the court has jurisdiction over these claims.

The plaintiffs must also demonstrate that they have standing to sue. A plaintiff's standing to sue depends on whether it is an "interested party." 28 U.S.C. § 1491(b)(1). An interested party is a party who was an actual or prospective bidder with a direct economic interest in the procurement. *E.g.*, *CliniComp Int'l, Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018). For the purpose of determining standing, a plaintiff demonstrates an economic interest in a procurement by showing that it had a substantial chance of securing the award, but for the alleged errors. *See id.* A court should presume that the plaintiff's non-frivolous allegations are true for the purposes of establishing standing. *See, e.g.*, *L-3 Commc'ns Corp. v. United States*, 99 Fed. Cl. 283, 289 (2011).

Prejudice is a question of fact. *Am. Relocation Connections*, 789 F. App'x at 225 (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353-54 (Fed. Cir. 2005)). Whether a party has alleged prejudice sufficient to establish standing is distinct from whether that party can prove prejudice on the merits. *See id.* at 225-26. The Federal Circuit has found plaintiffs to have standing even when the plaintiffs themselves were not qualified for award under the terms of the solicitation. *See, e.g.*, *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1358-60 (Fed. Cir. 2015) (finding that the plaintiff demonstrated prejudice for standing purposes when both the plaintiff and awardee did not qualify under the terms of the solicitation).

The plaintiffs have established standing to sue. The plaintiffs were actual offerors whose proposal was deemed technically acceptable. The plaintiffs' joint venture was one of two purportedly qualified offerors. The plaintiffs lost the competition only because their proposal was priced higher than CGS-ORSA's proposal. If State had determined that CGS-ORSA was ineligible for the award, as the plaintiffs allege it should have, the plaintiffs would have received the contract. The plaintiffs have thus met their burden of showing they have standing.

That the plaintiffs have shown sufficient prejudice to prove standing does not alter the court's assessment of the prejudice to the plaintiffs on the merits. *See Am. Relocation Connections,* 789 F. App'x at 225-26. The fact that the plaintiffs themselves did not qualify for award does not preclude a finding of standing. *See Tinton Falls*, 800 F.3d at 1358-60.

### III.   STANDARD OF REVIEW

The standards of review both for motions for judgment on the administrative record and for bid protests apply to this case. Review of a motion for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC") requires the court to make factual findings based on the administrative record. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike under motions for summary judgment pursuant to RCFC 56, genuine issues of material fact do not preclude judgment. *Id*. The court must determine whether a party has met its burden of proof based solely on the evidence contained in the administrative record. *Id*. at 1355.

The court reviews challenged contract awards under the standard of review prescribed by the APA, 5 U.S.C. § 706. *See* 28 U.S.C. § 1491(b)(4). Section 706 directs courts to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

Bid protests require a two-step analysis. *See Bannum*, 404 F.3d at 1351. First, the court determines whether the government's conduct is arbitrary and capricious or "not in accordance with law" under 5 U.S.C. § 706. *See Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013); *Bannum*, 404 F.3d at 1351. Second, if the government's conduct fails that first step of the review, the court must determine whether, as a factual matter, the bid protestor was prejudiced by the government's conduct. *Bannum*, 404 F.3d at 1351.

The plaintiff bears the burden of proving a clear and prejudicial violation of applicable regulations. *E.g., Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004). The violation of a regulation is prejudicial when the plaintiff had a substantial chance of receiving the contract but for the alleged error. *Id*.

## IV.   DISCUSSION

### A.   FAR 52.204-7

FAR 52.204-7(b)(1) (emphasis added) provides: "An Offeror is required to be registered in SAM *when submitting an offer or quotation*, and shall continue to be registered until time of award, during performance, and through final payment of any contract, basic agreement, basic ordering agreement, or blanket purchasing agreement resulting from this solicitation." This provision was expressly incorporated into the solicitation (AR 687), as FAR 4.1105 required.

FAR 52.204-7 was amended in 2018. "Federal Acquisition Regulation: System for Award Management Registration," 83 Fed. Reg. 48,691-01, 48,698 (Sept. 26, 2018). Prior to October 2018, offerors could register in SAM at any time prior to award. FAR 52.204-7(b)(1) (effective Oct. 31, 2016, until Oct. 25, 2018); *see also Nilson Van & Storage, Inc. v. United States*, 99 Fed. Cl. 408, 411 (2011).

The pre-October 2018 version of FAR 52.204-7 afforded contracting officers some discretion as to when to require SAM registration. FAR 52.204-7(d) (effective from Oct. 31, 2016 until Oct. 25, 2018) provided that "[i]f the Offeror does not become registered in the SAM database in the time prescribed by the Contracting Officer, the Contracting Officer will proceed to award to the next otherwise successful registered Offeror."

Since 2018, FAR 52.204-7 requires offerors to be registered in SAM when they submit an offer. The provision also no longer provides contracting officers with discretion. Subsection (d) of FAR 52.204-7 now provides: "Processing time should be taken into consideration when registering . . . ."

The agencies tasked with issuing the FAR (the Department of Defense, the General Services Administration, and National Aeronautics and Space Administration) (known as the "FAR Council") amended FAR 52.204-7 in 2018 to align its requirements with the language in

FAR 4.1102 and 4.1103, among other provisions.  *See* 83 Fed. Reg. at 48,692.  The FAR Council emphasized that the amendment of FAR 52.204-7 did not create a new requirement for offerors because FAR 4.1102 and 4.1103 already required offerors to register in SAM before submitting an offer.  *Id.*

FAR 4.1102 (emphasis added) provides that offerors "are required to be registered in SAM *at the time an offer or quotation is submitted*" unless the contract is specifically exempt.  The defendant and defendant-intervenor have not argued that the contract falls under one of the exemptions specified in FAR 4.1102.

FAR 4.1103 (emphasis added) likewise provides that the contracting officer "[s]hall verify that the offeror or quoter is registered in SAM . . . *at the time an offer or quotation is submitted*."  FAR 4.1103(a)(3) provides that a contracting officer "[n]eed not verify SAM registration before placing an order or call if the contract or agreement includes the provision at 52.204-7 . . . ."  The defendant acknowledges that FAR 4.1103 has the "same effect" as FAR 52.204-7.  (ECF 27 at 15.)

Additionally, FAR 4.102(d) provides that "[a] contract with joint venturers may involve any combination of individuals, partnerships, or corporations.  The contract shall be signed by each participant in the joint venture in the manner prescribed . . . ."

A contracting officer determines whether an offeror is registered in SAM by searching the offeror's unique-entity identifier (*i.e.*, DUNS number), which must correspond to the offeror's name and address as stated in the offer.  FAR 52.204-7(b)(2); FAR 4.605(b).  To be considered as registered in SAM, an offeror must meet four requirements: (1) the offeror must enter all mandatory information, including the unique-entity identifier (*i.e.*, the DUNS number), into SAM; (2) the offeror must complete mandatory sections of the SAM-registration application; (3) the government must validate all mandatory data fields; and (4) the record must be marked as "Active."  FAR 52.204-7(a).

When the FAR Council proposed the 2018 amendment to FAR 52.204-7, the proposed amendment was not without controversy.  One commenter suggested that joint ventures be exempted from the newly proposed requirement so long as each joint-venture entity had its own active SAM registration.  *See* 83 Fed. Reg. at 48,692.  The FAR Council rejected this suggestion, explaining:

> An exception to SAM registration requirements to provide for registration of joint ventures after submission of offers but prior to award is not practicable, because the contracting officer needs to review the annual representations and certifications to evaluate the offers.  Joint venture agreements should be in place more than 48-72 hours in advance of proposal submission, which allows adequate time for completion of registration in SAM.  It is also not feasible to rely on the SAM registration of separate members of the joint venture, because the Government collects specific part 19-related joint venture information in the representations and certifications

8

>    (52.219-1) part of SAM . . . . Offerors that are not registered in SAM should apply for registration immediately upon issuance of the solicitation so that there should be time for a joint venture or any other type of business to be registered in SAM at the time of the submission of an offer.

*Id.*

Thus, in revising FAR 52.204-7 in 2018, the FAR Council specifically considered whether to exempt joint ventures from being registered in SAM at the time they submitted offers to RFPs and rejected the notion.

### B.     Violation of FAR 52.204-7

The offer submitted by CGS-ORSA violated FAR 52.204-7.  That provision requires, among other things, the offering entity to have entered all mandatory identifying information in SAM and the profile to be marked as "active" at the time an offeror submits its offer.  FAR 52.204-7(a).

At the time that CGS-ORSA submitted its offer, the DUNS number it had used to attempt to register in SAM corresponded to the DUNS number for the CEO of CGS and not to CGS-ORSA itself.  Accordingly, CGS-ORSA, the offeror, had not properly entered all mandatory identifying information.  Additionally, at the time the offer was submitted, the government had not marked the registration as "active"; the registration was still "in progress."  (AR 2895-96.)  The requirements of FAR 52.204-7(a) therefore were not met.

The defendant has conceded that the joint venture CGS-ORSA itself was not registered in SAM at the time it submitted its offer.  (ECF 23 at 17.)  The defendant argues, however, that "[t]here is no requirement that the DUNS number associated with the joint venture be registered in SAM."  (*Id.*)  State was familiar with the owning entities of the joint venture, and both CGS and ORSA were themselves registered in SAM and had agreed with each other to be held jointly and severally liable under the contract.  (ECF 27 at 17.)

The Court rejects the defendant's argument.  This approach was specifically rejected by the FAR Council at the time FAR 52.204-7 was amended in 2018.  The regulation explicitly applies to joint ventures.  It was this specific application that prompted a commenter to object and propose that the regulation allow joint ventures to rely on the SAM registrations of their owning entities at the time of offer.  That proposed amendment was rejected.  As the FAR Council explained, excluding a joint-venture offeror itself from the SAM-registration requirement of FAR 52.204-7 would be "not practicable," because agencies rely on information in SAM to verify various certifications and representations.  83 Fed. Reg. at 48,692.

The approach advocated by the defendant and defendant-intervenor would negate the 2018 amendment to FAR 52.204-7 and would have the effect of reinstating the prior version of the FAR provision and allow agencies to exercise the discretion they had before the regulation was amended to waive the requirement of SAM registration at the time of offer.  That approach would allow an agency to waive a FAR provision with mandatory language without pursuing the

FAR's mandatory procedures when agencies seek to deviate from the FAR.  *See* FAR 1.403. Allowing mandatory requirements of the FAR to be waived would impermissibly involve the court in rewriting the regulation and in policy and process decisions that are outside its proper and limited function to apply the law as written.  An offeror's failure to register in SAM potentially implicates a failure to make certifications and representations that are required by statute.  Considering and weighing these various interests is something best left to the FAR Council to resolve as a matter of policy rather than to a court to address on a case-by-case basis. With respect to FAR 52.204-7, the FAR Council already balanced the various interests, including by considering specifically the issue presented here.  *See* Vernon J. Edwards, *"SAM" Registration: Not as Simple as It Seems*, 35 Nash & Cibinic Rep. ¶ 39 (2021).

In the face of the FAR Council's explicit rejection of the defense offered by the defendant and defendant-intervenor, there is only one conclusion to reach: CGS-ORSA's offer violated the FAR, because the joint venture CGS-ORSA was not registered in SAM at the time it submitted its offer.

      **C.**      **Agency Discretion**

The parties dispute whether the State Department had authority to waive the requirement that an offeror be registered in SAM at the time it submits its offer.  There is no legal basis for such agency authority.  As previously noted, the 2018 amendment to FAR 52.204-7 specifically deleted and replaced a subsection giving contracting officers discretion as to when to require an offeror to register in SAM.

Although the Court is not bound by GAO decisions, the Court may consider GAO precedent in reaching its decision.  *See Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1038 n.4 (Fed. Cir. 2009).  In *Acon Traders, LLC*, the GAO held that a bid protestor was ineligible for award under the current version of FAR 52.204-7 when the protestor was not registered in SAM at the time it submitted its quote, as was required by the solicitation.  *Acon Traders, LLC*, B-417558, 2019 CPD ¶ 226 (Comp. Gen. June 26, 2019).  *Acon Traders* is applicable and persuasive.

The GAO precedent cited by the defendant-intervenor is more complicated and not directly relevant to the present case.  The defendant-intervenor has urged the Court to follow the approach taken by the GAO in *Jade Excavation, Inc.*, B-419515, 2021 CPD ¶ 128 (Comp. Gen. Mar. 18, 2021) and *Master Pavement Line Corp.*, B-149111, 2020 CPD ¶ 404 (Comp. Gen. Dec. 16, 2020).  In those cases, the GAO required agencies to accept and overlook untimely SAM registrations pursuant to FAR 14.405, which mandates that agencies permit contractors to correct "minor informalities or irregularities" in their offers.  FAR 14.405, however, applies only to sealed-bid procurements.  *See Bus. Integra, Inc. v. United States*, 116 Fed. Cl. 328, 334-35 (2014).  The procurement at issue in this case was a negotiated procurement.  (AR 1.) Accordingly, FAR 14.405 (and by extension, the GAO's decisions in *Jade Excavation* and *Master Pavement Line*) does not apply.

Even if *Jade Excavation* and *Master Pavement Line* did apply, the cases do not support the defendant-intervenor's argument that an agency has discretion over when to enforce or waive

the provisions of the current version of FAR 52.204-7.  As a matter of law, these cases *divest* agencies of discretion because they *mandate* that agencies give offerors an opportunity to cure SAM-registration deficiencies.  *See Master Pavement Line*, 2020 CPD ¶ 404 (sustaining a protest and enjoining an award).

In a negotiated procurement, the GAO has held that an agency had discretion to allow a bid protestor to register in SAM after the submission of an offer but before the award of a contract. *Continuity Glob. Sols.-Secure Me WLL Sec., JV*, B-419875, 2021 CPD ¶ 281 (Comp. Gen. Aug. 12, 2021).  In that case, the solicitation itself was patently ambiguous as to whether the pre-2018-amendment version or the post-2018-amendment version of FAR 52.204-7 applied.

This case presents no similar ambiguity.  In that protest, the GAO also explicitly rejected the protestor's argument that the agency was required to waive or ignore the requirement that the protestor be registered in SAM.  Given this latter point, the GAO decision in *Continuity Global Solutions-Secure Me WLL Security, JV* is not inconsistent with the Court's decision here.

In sum, GAO precedent does not conflict with the Court's ruling in this case.

State lacked the discretion to waive the requirements of FAR 52.204-7, notwithstanding the inclusion in the Solicitation of a proviso that "[t]he Government may waive informalities and minor irregularities in offers received."  (AR 726.)  The Solicitation also incorporated FAR 52.215-1 (AR 1, 725), which provides, "[o]fferors may submit modifications to their proposals . . . to correct a mistake at any time before award."  If a solicitation's provisions are clear and unambiguous, however, the Court must interpret them according to their plain and ordinary meaning.  *See Banknote*, 365 F.3d at 1353.  As previously noted, the language of FAR 52.204-7 is clear and unambiguous: it applies to all offerors, whether they are joint ventures, LLCs, sole proprietorships, or other entities.  The Court also must interpret the solicitation "in a manner that harmonizes and gives reasonable meaning to all of its provisions."  *See id.* Therefore, an offeror's failure to register in SAM at the time of submission of an offer cannot constitute either a mistake under FAR 52.215-1 or a minor irregularity or informality under the solicitation.  This is the only interpretation of the Solicitation that harmonizes and gives reasonable meaning to all its terms.  *See Banknote*, 365 F.3d at 1353.

## V.     PREJUDICE

The plaintiffs have thus successfully demonstrated that there was a violation of procurement regulations in the procurement process.  But to prevail in their bid protest, the plaintiffs must also show that this violation was prejudicial.  *See Glenn Def.*, 720 F.3d at 912.

A plaintiff has been prejudiced when there was a substantial chance it would have received the contract award but for the contracting agency's errors in the bid process.  *See Bannum*, 404 F.3d at 1358.

There has been no prejudice when a bid protestor benefited from the same potentially unlawful discretion from which the awardee benefited.  For example, in *VS2, LLC v. United States*, 155 Fed. Cl. 738, 767-69 (2021), Judge Solomson rejected a protestor's claim when it had

11

committed the same alleged error in its offer as the awardee had committed. Similarly, in *Blue Origin Federation, LLC v. United States*, No. 21-1659, 2021 WL 5369223, at *36 (Fed. Cl. Nov. 4, 2021), the Court found that the plaintiff had not been prejudiced on the merits when its proposal was unawardable without further negotiations.

The plaintiffs here committed at least one of the errors they allege was committed by the defendant-intervenor, and therefore the plaintiffs benefited from the same exercise of discretion by State as the awardee. In such a situation, the plaintiffs are not able to demonstrate prejudice.

For both offerors, the entities owning the joint ventures were registered in SAM, but the joint ventures themselves were not registered. CGS-ORSA was not registered in SAM as a joint venture, and neither was the joint venture among the plaintiffs.

The plaintiffs argue that there is no requirement that the joint venture itself be the "offeror" to whom FAR 52.204-7 applies. (ECF 32 at 10.) They argue that because all three entities owning the joint venture were listed as offerors, their proposal met the requirements of FAR 52.204-7. The comment in the Federal Register does not support the plaintiffs' reading of FAR 52.204-7. Rather, it requires joint ventures—regardless of composition or presentation on a standardized form—to be registered in SAM. Neither G4S nor CGS-ORSA complied with FAR 52.204-7, notwithstanding the fact that they presented the identities of the offerors in distinct ways in their proposals.

Although the Court has found that State lacked discretion to waive the requirements of FAR 52.204-7, G4S benefited from the same exercise of discretion from which CGS-ORSA benefited. If State had correctly applied FAR 52.204-7, neither CGS-ORSA nor G4S would have qualified for award.

As in *Blue Origin*, both offerors would be required to resubmit their offers or engage in other post-hoc remedial efforts. 2021 WL 5369223 at *36. As in *VS2*, the bid protestor's offer contained at least one of the identical flaws as the awardee's offer. 155 Fed. Cl. at 767-69.

In sum, the plaintiffs have failed to prove that they were prejudiced by the manner in which State conducted the procurement. They did not have a substantial chance of an award absent agency error because the plaintiffs benefited from the agency's error in the same way that the defendant-intervenor did.

## VI.    ALTERNATIVE CLAIMS

The plaintiffs' other related arguments also fail. The plaintiff has argued that State violated the prohibition on subcontracting because the real offeror was the CEO of CGS's sole proprietorship, according to DUNS registration information. (ECF 21 at 28-29.) This argument is belied by overwhelming evidence in the administrative record that State knew that the joint venture between CGS and ORSA was the offeror. (*See* AR 752-54, 2739.) And as for an erroneous DUNS number, the plaintiffs' joint venture that was to perform the contract also did not have or submit a DUNS number. (AR 1198.) The plaintiffs again cannot show they were harmed by this failure on the part of CGS-ORSA.

The plaintiffs' third argument, that CGS-ORSA was ineligible for the price preference, suffers from the same defect as the plaintiffs' SAM-registration argument. This argument has two parts: first, that the CEO of CGS was the actual offeror; and second, the statement was certified by the officer of a joint venture or LLC that did not yet exist. The Court has already addressed the first part of the argument.

As to the second part of the argument, the Court finds that the plaintiffs have not shown prejudice on the merits. There is no requirement in the solicitation that a separate legal entity for joint ventures exist at the time an offeror submits a bid. CGS-ORSA did create its joint-venture entity after it had submitted its offer and certified its statement of qualification for the price preference, but this approach cannot prejudice the plaintiffs when they never established a separate joint-venture entity themselves.

If CGS-ORSA was ineligible for award based on the fact that it had not yet formed an LLC for its joint venture, neither was G4S. Again, the plaintiffs and defendant-intervenor benefited from the same exercise of discretion, lawful or not, regarding the existence or absence of a separate legal entity for the joint venture. The plaintiffs therefore have not demonstrated prejudice on the merits regarding the argument that CGS-ORSA was ineligible for a price preference. *See VS2*, 155 Fed. Cl. at 767-69.

That leaves the plaintiff's fourth and final argument: that CGS-ORSA's joint venture was invalid because the identities of the parties involved were obfuscated, and so State could not have properly evaluated CGS-ORSA's offer. This argument, too, is defeated by the administrative record and by the defendant's submission of additional evidence of ORSA's SAM registration and associated credentials. (*See* ECF 27-2.)

## VII. CONCLUSION

CGS-ORSA's proposal did not comply with FAR 52.204-7, and State lacked the discretion to ignore or waive this discrepancy. The plaintiffs, however, have failed to demonstrate that they were prejudiced by State's failure to enforce the provisions of FAR 52.204-7 because the plaintiffs' proposal suffered from a similar defect that State also overlooked. The plaintiffs' remaining three claims are also unavailing.

Accordingly, the plaintiffs' motion for judgment on the administrative record is denied. The cross-motions of the defendant and defendant-intervenor for judgment on the administrative record are granted, and the award to CGS-ORSA is upheld. The Court will enter an order in accordance with this memorandum opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**