# In the United States Court of Federal Claims

No. 21-1817C
Filed: April 8, 2022[*]
FOR PUBLICATION

|  |
|---|
| **G4S SECURE INTEGRATION LLC, et al.,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**UNITED STATES,**<br><br>*Defendant*,<br><br>and<br><br>**CGS-ORSA SECURITY LLC,**<br><br>*Defendant-Intervenor*. |

*Richard P. Rector*, DLA Piper LLP, Washington, D.C., for the plaintiffs, with *C. Bradford Jorgensen*, *Thomas E. Daley*, *Ryan P. Carpenter*, and *Christie M. Alvarez*, of counsel.

*Daniel A. Hoffman*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant, with *John W. Cox*, Office of the Legal Adviser, U.S. Department of State, of counsel.

*Robert Nichols*, Nichols Liu LLP, Washington, D.C., for the defendant-intervenor, with *Michael Bhargava*, *Madison Plummer*, and *Andrew Victor*, of counsel.

---

[*] Pursuant to the protective order in this case, the Court initially filed this opinion under seal on April 5, 2022, and directed the parties to propose redactions of confidential or proprietary information. The parties have jointly submitted to the Court proposed redactions. (ECF 73.) The Court adopts those redactions, as reflected in this public version of the opinion. Redactions are denoted with three asterisks in square brackets, [* * *].

**MEMORANDUM OPINION**

*HERTLING*, **Judge**

  The plaintiffs (G4S Secure Integration LLC; G4S Secure Solutions International, Inc.; and G4S Serviços de Segurança Angola LDA) move for an injunction pending appeal under Rule 62(d) of the Rules of the Court of Federal Claims ("RCFC"). In this post-award bid protest, the Court found that the plaintiffs had demonstrated that the evaluation of a contract awarded by the U.S. Department of State ("State") to the defendant-intervenor, CGS-ORSA Security LLC ("CGS-ORSA"), violated Federal Acquisition Regulation ("FAR") 52.204-7. The Court denied the plaintiffs' motion for judgment on the administrative record, however, because the plaintiffs had not demonstrated prejudice on the merits.

  In this pending RCFC 62(d) motion, the plaintiffs have not demonstrated that they either are likely to succeed on appeal or have presented a substantial case on the merits. Even if the plaintiffs had made either showing, other equitable factors weigh against awarding injunctive relief. Accordingly, the Court denies the plaintiffs' motion for an injunction pending appeal.

**I. BACKGROUND**

  The facts are recounted in detail in the Court's opinion on the merits of this case, *G4S Secure Integration, LLC v. United States*, No. 21-1817C, 2022 WL 211023 (Fed. Cl. Jan. 24, 2022). Briefly, the plaintiffs filed a post-award bid protest challenging a contract award issued by State for security services for the U.S. Embassy in Luanda, Angola. The plaintiffs submitted a proposal as a joint venture ("G4S") comprised of G4S Secure Integration LLC; G4S Secure Solutions International, Inc.; and G4S Serviços de Segurança Angola LDA. State awarded the contract to the defendant-intervenor, CGS-ORSA, a joint venture owned by Continuity Global Solutions, LLC ("CGS") and Omega Risk Solutions Angola ("ORSA").

  G4S argued that CGS-ORSA did not comply with FAR 52.204-7, which was incorporated into the solicitation, rendering CGS-ORSA ineligible for award. FAR 52.204-7(b)(1) provides that "[a]n Offeror is *required* to be registered in [System for Award Management ("SAM")] when submitting an offer or quotation . . . ."[1] (Emphasis added.) Until FAR 52.204-7(b)(1) was amended in 2018, offerors were permitted to register in SAM at any time prior to award. When the FAR Council amended FAR 52.204-7 in 2018, it published a response to a comment stating that this provision applied equally to joint ventures. *See* "Federal Acquisition Regulation: System for Award Management Registration," 83 Fed. Reg. 48,691-01, 48,692 (Sept. 26, 2018).

  At the time that CGS-ORSA submitted its offer to State, its joint venture was not registered in SAM. CGS-ORSA purported to have created a separate legal entity for its joint venture and later registered its joint venture as a Limited Liability Company ("LLC"). CGS and

---

  [1] SAM is a government database that maintains information on prospective and actual awardees of federal contracts. *See* FAR 52.204-13(a).

ORSA each maintained separate active SAM registrations.  Following a pre-award survey conducted by State, CGS-ORSA registered its joint venture in SAM prior to award.

G4S submitted an offer as a "contractor team arrangement," so it did not create a separate legal entity for its joint venture.[2]  (*See* ECF 32 at 3.)  Accordingly, G4S never registered its joint venture in SAM.  All three entities owning the joint venture maintained separate SAM registrations.

State conducted a pre-award survey and determined that both CGS-ORSA and G4S were eligible for award.  The solicitation indicated that State would select the awardee with the lowest priced, technically acceptable proposal.  State determined that G4S's and CGS-ORSA's proposals were both technically acceptable.  State selected CGS-ORSA for award because its proposed price was eight percent lower than G4S's proposed price.

The Court held that the plaintiffs had standing to sue because they were actual offerors claiming that they were eligible for award.  If State had determined that CGS-ORSA was ineligible for the award, as the plaintiffs allege it should have, G4S would have had a substantial chance of being awarded the contract.

The plaintiffs further demonstrated that State had violated FAR 52.204-7 when State did not require CGS-ORSA's joint venture to be registered in SAM at the time it submitted its offer.  State lacked discretion to overlook or waive the requirements of FAR 52.204-7.

The Court held, however, that this error was not prejudicial because G4S had not registered its own joint venture in SAM.  G4S had benefited from the same unlawful discretion from which the awardee benefited.  The plaintiffs argued that because all three entities participating in the G4S joint venture were listed as separate offerors, their proposal met the requirements of FAR 52.204-7.  The comment in the Federal Register, however, does not distinguish the applicability of FAR 52.204-7 based on the type of joint venture submitting an offer.  Even if State had found CGS-ORSA to be ineligible for award, G4S did not prove that it had a substantial chance of receiving the contract because its own proposal suffered from the same defect as CGS-ORSA's.

In the absence of any prejudice to the plaintiffs, the Court granted the defendant's and defendant-intervenor's motions for judgment on the administrative record and denied the plaintiffs' motion for judgment on the administrative record.  (ECF 39, 40.)  The plaintiffs filed a notice of appeal.  (ECF 50.)

On March 2, 2022, the plaintiffs filed a motion for an injunction pending appeal under RCFC 62(d).  (ECF 51, 52.)  The defendant and defendant-intervenor filed responses to the

---

[2] At oral argument on this motion, the plaintiffs analogized the structure of this arrangement to a partnership.

plaintiffs' motion.  (ECF 61, 62.)  The plaintiffs filed a combined reply brief on March 24, 2022.  (ECF 66.)  The Court heard oral argument on March 30, 2022.

## II.     STANDARD OF REVIEW

Under RCFC 62(d), while an appeal is pending from a final judgment refusing an injunction, "the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  The moving party bears the burden of demonstrating that an injunction pending appeal is appropriate.  *See, e.g.*, *Telos Corp. v. United States*, 129 Fed. Cl. 573, 575 (2016).  An injunction pending appeal is an "'extraordinary and drastic remedy,'" which is not granted lightly.  *See id.* (quoting *Akima Intra–Data, LLC v. United States*, 120 Fed. Cl. 25, 27 (2015)).

In determining whether the moving party has met its burden of showing that a stay pending appeal is appropriate, a court considers four factors:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted).  Because these "traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."  *Id*. at 777.

In evaluating whether to grant a stay pending appeal, the Federal Circuit "assesses [a] movant's chances for success on appeal and weighs the equities as they affect the parties and the public."  *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987).

The Federal Circuit elaborated the governing test in *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511 (Fed. Cir. 1990).  Under the test, which the Circuit described as "effectively merg[ing]" the four factors outlined in *Hilton*, "[e]ach factor . . . need not be given equal weight."  *Id*. at 512-13.  When the "harm to the applicant is great enough, a court will not require 'a strong showing' that applicant is 'likely to succeed on the merits.'"  *Id*. at 513 (quoting *Hilton*, 481 U.S. at 776).  The Federal Circuit described this standard as a "'sliding scale approach.'"  *Id*. (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387-88 (7th Cir. 1984)).  Under the Circuit's approach, "'[t]he more likely the [applicant] is to win, the less heavily need the balance of harms weigh in [its] favor; the less likely [it] is to win, the more need it weigh in [its] favor.'"  *Id*. (quoting *Roland Mach.*, 749 F.2d at 387-88).  Thus, a stay pending appeal may be appropriate even when the moving party has not shown that it is likely to succeed on the merits if the moving party has demonstrated a substantial case on the merits, and the other factors tilt decidedly toward the moving party.  *Telos*, 129 Fed. Cl. at 575.

### III.  DISCUSSION

The plaintiffs' motion for a stay pending appeal must be considered under the four *Hilton* factors.  The first and most important factor to consider is whether the plaintiffs have shown a likelihood of success on the merits of their appeal or have shown that their appeal presents a substantial case on the merits.

#### A.  Success on the Merits

The plaintiffs argue that they are likely to succeed on the merits of their appeal.  (ECF 52 at 3-7.)  Although an injunction pending appeal is an extraordinary remedy, the plaintiffs argue that the Court's equitable powers exist for a reason.  *See PDS Consultants, Inc. v. United States*, 133 Fed. Cl. 810, 818 (2017) (granting an injunction under RCFC 62(d)).[3]

G4S and CGS-ORSA were the only offerors that State found to be eligible in the protested procurement, and neither offeror met the requirements of FAR 52.204-7 because neither offeror's joint venture was registered in SAM when the offers were submitted.  State lacked the discretion to ignore or waive FAR 52.204-7.  The plaintiffs argue that instead of upholding the award of the contract to CGS-ORSA, an ineligible offeror, the Court should have remanded the procurement to State.  The plaintiffs assert that, on remand, State would have needed to reopen the procurement because there was no eligible offeror.  The plaintiffs claim that G4S would have a substantial chance of award in any new competition.

In support of this motion, the plaintiffs do not directly challenge the Court's finding that the plaintiffs' proposal violated FAR 52.204-7, although they explain that they intend to pursue that argument on appeal.  Rather, the plaintiffs argue that they were prejudiced by State's error in making an award to an ineligible offeror and that the Court erred in upholding that award.

The Court considers whether the plaintiffs have demonstrated that they are likely to succeed in proving prejudice on the merits upon their appeal before analyzing whether the plaintiffs have met their burden to show a substantial case on the merits.

##### 1.  Prejudice on the Merits

The Federal Circuit has rejected the proposition that "if the government makes any mistake in a procurement process . . . , no matter how slight or unharmful, then it must nullify the contest and begin anew."  *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1380 (Fed. Cir. 2009).  "[N]on-prejudicial errors in a bid process do not automatically invalidate a

---

[3] During oral argument and in their brief in support of this motion, the plaintiffs rely on a cursory one-page order granting a stay pending appeal in *CGI Fed. Inc. v. United States*.  (No. 14-355, ECF 53.)  An unexplained order cannot be used to support the plaintiffs' argument in the present case, except to show, as a general matter, that injunctions under RCFC 62(d) are appropriate when the test for such an injunction is met, and RCFC 62(d) itself provides all the support necessary for that proposition.

procurement." *Id.* Whether State needed to recompete the procurement therefore depends on whether State's misinterpretation of FAR 52.204-7 was prejudicial to the plaintiffs. *Id.*; *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2004) (emphasis added) ("A bid protest proceeds in two steps. First, . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second, . . . if the trial court finds that the government's conduct fails the [Administrative Procedure Act] review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, *if the bid protester was prejudiced by that conduct*.").

In *Labatt*, the Federal Circuit ruled that a protestor had not established prejudice when the government accepted bid revisions via e-mail rather than fax, even though the solicitation required revisions to be made via fax. 577 F.3d at 1380-81. The protestor had submitted its proposal late, providing the agency with "a separate and independently sufficient ground for rejection." *Id.* at 1381. The Federal Circuit held that "[a]ll errors are not equal. . . . There is no connection between the government's method of transmission error and Labatt's failure to secure the contract. Without a showing of harm specific to the asserted error, there is no injury to redress, and no standing to sue." *Id.*

Although the court in *Labatt* addressed prejudice as it relates to standing rather than prejudice on the merits, the Federal Circuit has since clarified that the question of whether the error is related to action adverse to the protestor is also relevant to the issue of whether the protester suffered prejudice on the merits. In *American Relocation Connections, LLC v. United States*, the Federal Circuit explained, "'The correction of an error must yield a different result in order for that error to have been harmful and thus prejudice a substantial right of a party.'" 789 F. App'x 221, 228 (Fed. Cir. 2019) (quoting *Munoz v. Strahm Farms, Inc.*, 69 F.3d 501, 504 (Fed. Cir. 1995)). Review of agency action in a bid protest requires "courts to disregard 'errors or defects which do not affect the substantial rights of the parties.'" *Id.* (quoting 28 U.S.C. § 2111). To succeed in a bid protest, a plaintiff must show "a greater-than-insignificant chance" of prevailing absent agency error. *Id.*

In this case, State's misapplication of FAR 52.204-7 did not prejudice the plaintiffs. The SAM-registration status of neither CGS-ORSA nor the plaintiffs affected State's award decision. State evaluated both proposals, despite the lack of SAM registrations. CGS-ORSA secured the award because its proposal was technically acceptable, and its proposed price was lower than G4S's proposed price. Neither joint venture adhered to the requirements of FAR 52.204-7, and neither offeror gained a competitive advantage in the procurement resulting from the status of its SAM registration. As in *Labatt*, there was therefore no connection between the error the plaintiffs asserted and their failure to secure the contract.

The plaintiffs offer three reasons why this case is distinct from *Labatt*. First, the plaintiffs underscore that in *Labatt*, there was a "'separate and independently sufficient ground'" for eliminating that plaintiff from the competition; the plaintiff had submitted its proposal late. (ECF 66 at 8 (quoting *Labatt*, 577 F.3d at 1381).) In this case, both CGS-ORSA and the plaintiffs were ineligible for award for the same reason.

Although the plaintiffs were never eliminated from the competition, their proposal was rejected for a reason different from the alleged error: their price. State had separate and independently sufficient grounds, setting the SAM-registration issue aside, for selecting CGS-ORSA's proposal for award. As in *Labatt*, both G4S and CGS-ORSA had a full and equal opportunity to compete for the contract.

Second, the plaintiffs seek to distinguish *Labatt* because the plaintiff in that case "sat on its rights regarding whether email was an acceptable method of transmission . . . ." (ECF 66 at 9.) That fact does not appear to have been material to the Federal Circuit's ruling that "non-prejudicial errors in a bid process do not automatically invalidate a procurement." *Labatt*, 577 F.3d at 1380.

Finally, at oral argument on this motion, the plaintiffs argued that *Labatt* is distinct because the awardee in that case was eligible for award. In this case, on the other hand, the initial decision upheld the award of a contract to an ineligible offeror.

The plaintiffs' attempt to distinguish *Labatt* on this third ground distorts the facts underlying that case. A judge of this court had found that the agency's "deviation from the solicitation render[ed] the proposal revisions from all offerors unable to be considered by the agency," *i.e.*, ineligible for award. *Labatt Food Serv., Inc. v. United States*, 84 Fed. Cl. 50, 59 (2008). The Federal Circuit did not disturb that finding and assumed in its analysis of prejudice that the government's acceptance of e-mailed revisions was "unauthorized" and "erroneous." *Labatt*, 577 F.3d at 1381. The facts of *Labatt* are therefore analogous to those of this case: the agency committed an error, but that error did not affect the plaintiffs' loss of the contract award. The plaintiffs were not awarded the contract for reasons, such as price here or lateness in *Labatt*, unrelated to the agency's error.

In addition, the plaintiffs' attempt to divert the focus of the prejudice analysis from their own ineligibility to the ineligibility of the awardee is misplaced. The plaintiffs must show a substantial chance of award absent agency error, and that inquiry requires some examination of the plaintiffs' own eligibility. For example, in *Alfa Laval Separation, Inc. v. United States*, the Federal Circuit held that a plaintiff was prejudiced when its proposed price was lower than the awardee's proposed price and the plaintiff's proposal was "'irrefutably compliant'" with the terms of the solicitation. 175 F.3d 1365, 1368 (Fed. Cir. 1999) (quoting *Alfa Laval Separation, Inc. v. United States*, 40 Fed. Cl. 215, 230 (1998)). When determining whether the plaintiffs have shown prejudice on the merits, the plaintiffs' own eligibility matters.

The plaintiffs also have not explained how State's failure to follow FAR 52.204-7 affected their substantial rights and is not therefore a harmless error. *See Am. Relocation Connections*, 789 F. App'x at 228. The plaintiffs argue that if the Court ordered an injunction pending appeal, State would have broad discretion in deciding how to recompete the contract, and State "*could*, for example, take corrective action by reopening discussions and permitting G4S and CGS-ORSA to submit revised proposals that comply with FAR 52.204-7 and provide updated, lower pricing." (ECF 66 at 4 (emphasis added).) Agencies have broad discretion in determining how to take corrective action. *See Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992-97 (Fed. Cir. 2018) (evaluating an agency's corrective action under the rational-basis

standard); *ANHAM FZCO v. United States*, 149 Fed. Cl. 427, 438 (2020) (holding that "the court will not substitute its judgment for that of the agency" in determining the appropriate scope for corrective action). The plaintiffs also quote FAR 6.101 for the proposition that State should "'promote and provide for full and open competition.'" (ECF 66 at 4-5.)

In determining whether the plaintiffs have been prejudiced on the merits, the question is not whether the agency could possibly reach another result if it were to recompete a solicitation. The question is whether the plaintiffs "show that there is a greater-than-insignificant chance" that the agency would reach a different result "had it not committed the alleged errors." *Am. Relocation Connections*, 789 F. App'x at 228. Because of the substantial price differential between the plaintiffs' proposal and CGS-ORSA's proposal, the plaintiffs' speculation on the possible outcome of the procurement were State to recompete the solicitation does not meet their burden set forth by the Federal Circuit. There is little connection between the broad discretion agencies have in taking corrective action and the plaintiffs' burden to prove prejudice. The plaintiffs have already had an opportunity to participate in a full and open competition for award; the plaintiffs lost that competition because they proposed a higher price than the awardee did, not because of any of the offerors' SAM-registration status.

In *Bannum*, the Federal Circuit held that a plaintiff had not demonstrated prejudice on the merits when there was "nothing besides [the plaintiff's] conjecture to support the contention that another review, comporting with the FAR, would provide it a substantial chance of prevailing in the bid. [The plaintiff's] argument rests on mere numerical possibility, not evidence." 404 F.3d at 1358. The test for prejudice "is more lenient than showing actual causation," but a plaintiff must show that there was a "substantial chance" of receiving the award but for the agency's errors. *Id.* The plaintiff in *Bannum* had advocated for a different calculation of its score which, even if employed, would not have allowed the plaintiff to be awarded the contract. Although the plaintiff successfully argued on the merits that the government had violated a regulation and the terms of its solicitation, the error was harmless and therefore not prejudicial.

As in *Bannum*, the probability that G4S would prevail if State recompeted the procurement is based on "conjecture" and "mere numerical possibility." *See id*. Finding that the plaintiffs were prejudiced requires jumping through multiple theoretical hoops: if the Court remanded its decision to the agency and the agency decided to recompete the contract and the agency decided to ask for revised pricing, then it is *possible* that G4S would win the contract award. This mere possibility does not meet the bar the Federal Circuit set for prejudice in *Bannum*. Although the plaintiffs need not show that State's violation of FAR 52.204-7 caused them to lose the contract, they must show a "substantial chance" of award absent agency error. Not all agency errors are prejudicial, and the plaintiffs have not demonstrated how State's unlawful waiver of FAR 52.204-7 impaired their chance to receive the contract award.

In *Safeguard Base Operations, LLC v. United States*, the Federal Circuit noted that an offeror's omissions in its proposal "would have been prejudicial to other bidders unless the same omissions were waived for them as well." 989 F.3d 1326, 1347 (Fed. Cir. 2021). The Court deduces from this quotation that when an agency waives requirements equally for different offerors, no prejudice results. Because State waived the requirements of FAR 52.204-7 equally for both CGS-ORSA and G4S (even if State lacked discretion to do so), G4S was not prejudiced.

The plaintiffs argue that *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353 (Fed. Cir. 2015), required the award to CGS-ORSA to be vacated and State to recompete the solicitation because neither offeror was qualified. (ECF 52 at 5.) In *Tinton Falls*, the Federal Circuit held that the plaintiff had demonstrated prejudice for the purpose of standing when, if the plaintiff were to prevail, the agency would need to recompete the solicitation and would likely need to alter its scope. *Tinton Falls*, 800 F.3d at 1359-60. The Federal Circuit limited its discussion to prejudice for standing and its holding to the facts of that case:

> We need not determine whether, in all circumstances, a protester can "compete" for a reopened bid for the purposes of *standing* . . . when the protester was not a qualified bidder for the initial bid and would be a qualified bidder for the reopened bid only if the contract was solicited with substantially different eligibility requirements. We hold only that under the particular facts of this case, the Claims Court did not clearly err in finding that Tinton Falls had a substantial chance of winning a reopened bid should it prevail in its bid protest.

*Id.* at 1360 n.3 (emphasis added). The Federal Circuit thus acknowledged that a situation in which no offerors are allegedly eligible for award in a procurement does not necessarily give rise to prejudice on standing, let alone prejudice on the merits. *Id.*

The Federal Circuit recently relied on *Tinton Falls* in *VAS Realty, LLC v. United States*, 26 F.4th 945 (2022). In the latter case, the Federal Circuit held that a plaintiff whose proposal was deemed technically unacceptable nonetheless had standing to protest because, if the plaintiff prevailed, the government would need to rebid the procurement. The plaintiff had "a substantial chance of winning the lease for *purposes of standing*." *Id.* at 950 (emphasis added).

Under *Tinton Falls* and *VAS Realty*, the plaintiffs demonstrated a substantial chance of award for the purposes of standing. The Court so found in its initial decision. *G4S Secure Integration*, 2022 WL 211023, at *4. That finding does not relieve the plaintiffs from their separate and distinct burden of demonstrating that State's failure to enforce FAR 52.204-7 was prejudicial to G4S on the merits. *See Am. Relocation Connections*, 789 F. App'x at 228. It was in failing to show prejudice necessary to prevail on the merits, rather than the prejudice needed for standing, that the plaintiffs' claim foundered, and neither *Tinton Falls* nor *VAS Realty* speaks to that issue.

Furthermore, in *Tinton Falls* and *VAS Realty*, there was a stronger connection between the challenged agency error and the plaintiffs' likelihood of success. The plaintiff in *Tinton Falls* challenged the agency's interpretation of a "small business concern," and the plaintiff's proposal was rejected because it was not a "small business concern" eligible to compete for the solicitation. 800 F.3d at 1359. The plaintiff in *VAS Realty* challenged aspects of the awardee's proposal allegedly containing errors that the plaintiff did not also make. 26 F.4th at 950. Here, as noted, the plaintiffs cannot show they were prejudiced by the agency error when that error did not affect the plaintiffs' failure to secure the award. Accordingly, the principle in *Labatt* that there must be a connection between the procurement error and harm to the plaintiff still stands and applies here to negate a finding that the plaintiffs were prejudiced.

Implicit in the plaintiffs' argument is the inference that the Court's decision was hypocritical: the Court found that State could not waive FAR 52.204-7, but the Court then effectively waived FAR 52.204-7 by upholding the award of a contract to an ineligible offeror when the Court should have remanded to the agency for further consideration. This argument conflates an agency's discretion to waive informalities with a plaintiff's burden to prove prejudice on the merits. An agency can waive minor informalities or irregularities when the irregularity is one of "'form and not of substance,'" and the defect is immaterial with respect to price, quantity, quality, or delivery. *Safeguard Base Operations*, 989 F.3d at 1347-48 (quoting FAR 14.405).[4] Judges of this court have held that when a requirement "serves a substantive purpose," it is material and thus not waivable by the agency. *ManTech Advanced Sys. Int'l, Inc. v. United States*, 141 Fed. Cl. 493, 507 (2019).

An agency's discretion to waive defects is a distinct and separate inquiry from prejudice on the merits. The Government Accountability Office has repeatedly explained that even when an agency abuses its discretion in waiving a material term, a plaintiff must show that the agency's abuse of discretion was prejudicial.[5] As the Federal Circuit has noted, "there is no presumption of prejudice when a protestor demonstrates irrationality in an agency decision." *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021). There is a fundamental difference between an agency's discretion to waive defects under the law and the Court's review of whether that waiver caused any injury. Once a court determines that the agency's action did not prejudice a protester, the court's role is at an end. Accordingly, the Court's decision that State lacked discretion to waive FAR 52.204-7 did not necessitate a remand to the agency when the plaintiffs did not otherwise demonstrate prejudice.

The plaintiffs rely on cases in which the government was obligated to reopen procurements for reasons that are not applicable to this case. For example, in *Centerra Group, LLC v. United States*, the agency had engaged in a "mockery of fundamental fairness and competitive principles" by holding improper discussions with one offeror in response to a bid protest brought by another offeror. 138 Fed. Cl. 407, 417-18 (2018). In *Manus Medical, LLC v. United States*, the agency took unlawful "corrective" action by permitting one offeror to correct

---

[4] FAR 14.405 applies only to sealed bids and not to negotiated procurements. Nonetheless, the solicitation in this case permitted State to waive minor irregularities or informalities.

[5] *22nd Century Techs., Inc.*, B-417478.5, 2020 CPD ¶ 153 (Comp. Gen. Apr. 28, 2020) ("Unfair competitive prejudice from a waiver or relaxation of the terms and conditions of the RFP for one offeror exists where the protester would have altered its proposal to its competitive advantage had it been given the opportunity to respond to the altered requirements."); *Glem Gas S.p.A.*, B-414179, 2017 CPD ¶ 60 (Comp. Gen. Feb. 23, 2017) ("[C]ompetitive prejudice is an essential element of a viable protest" to an agency's discretion to waive compliance with the solicitation); *Lockheed Martin Corp.*, B-411365.2, 2015 CPD ¶ 294 (Comp. Gen. Aug. 26, 2015) ("An agency may waive compliance with a material solicitation requirement in awarding a contract only if the award will meet the agency's actual needs without prejudice to other offerors.").

10

its incomplete solicitation. 115 Fed. Cl. 187, 194 (2014). In *Ernst & Young, LLP v. United States*, the agency provided an offeror with proprietary nonpublic government information, giving that competitor a competitive advantage in securing a contract. 136 Fed. Cl. 475, 509 (2018).

State's error in this case contains no similar tint of bias or unequal treatment. Rather, the plaintiffs and CGS-ORSA benefited from the same mistake in the same manner. State overlooked both offerors' failure to register their joint ventures in SAM at the time they submitted their offers. This distinction renders the cases on which the plaintiffs rely inapposite. The cases cited by the plaintiffs do not support the conclusion that State has to recompete the procurement at issue to remedy the defect here, as State's error did not jeopardize the integrity of the procurement.

The plaintiffs also rely on *CW Government Travel, Inc. v. United States*, in which Judge Somers explained that "if an agency were obligated to rebid a contract following protest, and the successful protestor 'could compete for the contract once again,' then the protestor has satisfied the 'substantial chance' standard." 154 Fed. Cl. 721, 747 (2021) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001)). In that case, the agency had not conducted a required price analysis, leaving the court with "'nothing to review and no way of determining whether [the plaintiff] was prejudiced.'" *Id.* (quoting *Active Network, LLC v. United States*, 130 Fed. Cl. 421, 429 (2017)); *see also Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed. Cl. 502, 516 (2003) (finding prejudice when the agency failed to engage in a required price analysis).

The facts here are different, and the difference is crucial. The plaintiffs did not allege that State failed to engage in a required price analysis. Indeed, the plaintiffs lost the procurement due to the price differential between their offer and the winning offer. The administrative record in this case was complete and enabled the parties and the Court to conduct a thorough review. Because of this stark difference, *CW Government Travel* and *Al Ghanim* do not support the conclusion that State must recompete the procurement at issue.

The plaintiffs also argue that two cases upon which the Court relied in its memorandum opinion are distinguishable. The Court relied on *Blue Origin Federation, LLC v. United States*, 157 Fed. Cl. 74 (2021), for the proposition that a plaintiff has not shown prejudice when its proposal would be unawardable without further negotiations. *G4S Secure Integration*, 2022 WL 211023, at *8-9. The plaintiffs argue that negotiations in *Blue Origin* would be discretionary, whereas in this case, they are mandatory because State lacked the discretion to waive FAR 52.204-7. (ECF 52 at 5-6.) The plaintiffs have not demonstrated, however, that State was required to reopen the procurement when the only two offerors State had deemed eligible had not registered their joint ventures in SAM. The plaintiffs were not prejudiced when the requirements of FAR 52.204-7 were waived equally for everyone.

The Court also relied on *VS2, LLC v. United States*, 155 Fed. Cl. 738, 767-79 (2021), in which Judge Solomson rejected a plaintiff's claim when it had committed the same alleged error in its offer as the awardee had committed. *G4S Secure Integration*, 2022 WL 211023, at *8-9. The plaintiffs argue that this case is distinct because other offerors in the procurement at issue in

11

*VS2* besides the plaintiff and defendant-intervenor were eligible for award. (ECF 52 at 6-7.) The rationale in *VS2* does not depend on the plaintiffs' proffered distinction; rather, Judge Solomson emphasized that the protestor could not complain about a government misinterpretation of the solicitation when the protestor "relied upon the very same interpretation when preparing its proposal." *VS2*, 155 Fed. Cl. at 768. Like CGS-ORSA, G4S relied on State's interpreting FAR 52.204-7 to mean that joint ventures themselves did not need to be registered in SAM. The analogy to *VS2* is therefore apt.

Even if the plaintiffs' argument distinguishing *Blue Origin* and *VS2* is correct, that argument fails to address the crux of the shortcoming in the plaintiffs' case, the failure to show prejudice, as the Federal Circuit's precedents require for a party to obtain relief.

In sum, the plaintiffs have not met their burden of showing that they are likely to succeed on the merits because they have not shown prejudice on the merits. The Court still finds that G4S benefited from State's misinterpretation of FAR 52.204-7 in the same way that CGS-ORSA did. Accordingly, State was not required to reopen the competition.

### 2. Substantial Case on the Merits

A party seeking an injunction pending appeal may prevail without showing that it is likely to succeed on the merits if it makes a lesser showing that it has a substantial case on the merits. *See, e.g.*, *Telos*, 129 Fed. Cl. at 575. A moving party demonstrates that it has a substantial case on the merits by showing that "the question raised is novel or close," *Acrow Corp. of America v. United States*, 97 Fed. Cl. 182, 184 (2011), or that "'the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation.'" *Standard Havens Prods.*, 897 F.2d at 513 (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)).

When delivering the ruling orally to the parties during a status conference before filing the written opinion, the Court remarked that this case was "a challenging case with a distinctive and unusual set of facts in a novel, largely unexplored area of the law." (ECF 54 at 29:24–30:1.) This case turned on the interpretation of FAR 52.204-7, a regulation of relatively recent vintage, and its application to joint ventures. The parties and the Court found scant law applying to the questions raised by this litigation. The only plausible reading of FAR 52.204-7 the Court could construe seems to close the door to informal joint ventures. (*See id.* at 34:23–35:14.)

The plaintiffs clarified during oral argument that, although they intend to argue on appeal that the Court misapplied FAR 52.204-7 to G4S but not to CGS-ORSA, the application of FAR 52.204-7 is not at issue in this motion. In support of this motion, the plaintiffs focus on the question of whether the Court erred in its decision regarding the absence of prejudice to the plaintiffs on the merits of their claim. The plaintiffs argue that with both CGS-ORSA and G4S ineligible under the Court's interpretation of FAR 52.204-7, State was required to reopen the procurement, and that the Court erred in affirming the award of the contract to CGS-ORSA, an ineligible offeror.

The questions raised by the plaintiff on this motion are neither novel nor close. As rehearsed above, the principle is well-settled that to show prejudice on the merits, a party must show a "greater-than-insignificant chance" of receiving the contract award absent agency error. *Am. Relocation Connections*, 789 F. App'x at 228. Courts must "disregard 'errors or defects which do not affect the substantial rights of the parties.'" *Id.* (quoting 28 U.S.C. § 2111). A plaintiff is not prejudiced by an error when there is no "harm specific to the asserted error," *Labatt*, 577 F.3d at 1381, and when their likelihood of success upon recompetition of the procurement "rests on mere numerical possibility, not evidence." *Bannum*, 404 F.3d at 1358.

Although the underlying issue of the effect of FAR 52.204-7 is novel and its outcome uncertain, given the well-established standards for finding prejudice to an unsuccessful offeror, the plaintiffs have not demonstrated that they are raising a substantial and novel question of law. Accordingly, the plaintiffs have not prevailed on the first factor for an injunction pending appeal.

### B.   Irreparable Harm

The plaintiffs argue that they will suffer irreparable harm absent injunctive relief, including the loss of [* * *] jobs performed under the incumbent contract, approximately $[* * *] million in revenue for each year of performance, and the cost to hire and train new staff if the plaintiffs succeed on appeal. (ECF 52 at 7.)

The defendant and defendant-intervenor do not dispute that the plaintiffs will lose employees and revenue absent an injunction, but they argue that those harms are not the type of irreparable harm warranting an injunction pending appeal.[6]  (ECF 61 at 5-6; ECF 62 at 11.)

An injunction is inappropriate when "the harms alleged by plaintiff are the sorts of things that any incumbent would experience upon the loss of a successor contract." *CRAssociates, Inc. v. United States*, 103 Fed. Cl. 23, 26 (2012). "No federal contractor has a right to maintain its incumbency in perpetuity. It follows, *a fortiori,* that the potential loss of the benefits of incumbency does not give plaintiff some sort of automatic right to a stay pending appeal." *Id.*

---

[6] The defendant also argues that the fact that the plaintiffs waited 37 days after the filing of the initial decision before moving for an injunction undercuts their arguments regarding the harms they will endure in the absence of a stay. (ECF 62 at 11-12); *see HVF W. LLC v. United States*, 148 Fed. Cl. 45, 57 (2020); *Lawson Env't Servs., LLC v. United States*, 128 Fed. Cl. 14, 19 (2016). The plaintiffs did not immediately file an appeal and move for a stay following the issuance of the Court's opinion. Instead, the plaintiffs sought new counsel. The new counsel then had to be admitted to the protective order and review the administrative record before deciding whether to file an appeal. The plaintiffs moved with sufficient speed given their change of counsel. More importantly, they moved for a stay well in advance of the May 31, 2022, end of the current bridge contract the plaintiffs are performing and State's estimated notice to proceed date of June 1, 2022, for the new contract. In these circumstances, the Court finds that the delay in filing this motion weighs neither for nor against the factor of irreparable harm.

More specifically, an incumbent contractor's loss of employees does not automatically warrant injunctive relief. In *PGBA, LLC v. United States*, Judge Lettow noted that although the loss of employees causes "significant" harm, an incumbent contractor's "reliance on the loss of its current employees as a basis for irreparable injury would require this Court to consider any incumbent contractor's loss of a successor contract to be irreparable harm." 60 Fed. Cl. 196, 221, *reconsideration denied*, 60 Fed. Cl. 567, *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004).

To the same effect is *Akima Intra–Data*, in which Judge Firestone declined to find that the moving party could demonstrate irreparable harm from the loss of significant revenue. 120 Fed. Cl. at 28-29. As Judge Firestone noted, "the loss of a contract cannot serve as the basis for finding irreparable harm." *Id.* at 28. This Court agrees; to hold otherwise would grant an incumbent contractor that failed to retain the contract the power to freeze the new award in place just by filing a bid protest and then an appeal if the protest is unsuccessful.

This is not to say that incumbent contractors may never face irreparable harm. For example, in *PDS Consultants*, Judge Firestone found irreparable harm when the incumbent contractor's loss of its contracts would undermine its mission as a nonprofit to "provide employment, training, and services to persons who are blind." 133 Fed. Cl. at 817. Denial of an injunction would raise no similar concerns in this case.

The harms on which the plaintiffs rely to support their motion for a stay, the loss of revenue and employees, are no different from the harms that incumbent contractors regularly confront when they lose a contract. The prospective harms to the plaintiffs are not unusually distinctive or compelling. Accordingly, the plaintiffs have not demonstrated that they risk suffering irreparable harm to the point that the Court should grant "extraordinary and drastic" relief. *See Telos*, 129 Fed. Cl. at 575.

### C.     Injury to Other Parties

The plaintiffs argue that the harm to them from denying a stay "greatly outweighs the harm" to State because G4S, as the incumbent contractor for 11 years, has the capacity to continue to perform under a bridge contract while the appeal is pending. (ECF 52 at 7-8.) State "would not suffer any harm if it were enjoined, as it has a capable contractor in place to perform the local guard force work." (*Id.*) State could further avoid the costs of transitioning the contract from G4S to CGS-ORSA, a transition which State may need to fund and implement twice if the plaintiffs prevail on appeal. The plaintiffs argue that CGS-ORSA would not be harmed by an injunction, "as it does not have a right to perform a contract it was not eligible to be awarded." (*Id.*)

The defendant argues that an injunction will substantially injure State and CGS-ORSA. State and CGS-ORSA initiated a transition of the contract on February 9, 2022, and they "have expended resources to facilitate an estimated notice to proceed date of June 1, 2022." (ECF 62 at 12.) The defendant asserts that State will also suffer harm because it organizes local guard force contracts for competition according to a phased schedule. When contract awards are delayed, "the carefully phased schedule established by [State] to manage security at installations around

14

the world becomes more difficult to manage." (*Id.*)  The delay can impair security at U.S. embassies around the world.

The plaintiffs note that State and CGS-ORSA are still in the early stages of transitioning the contract, so the harm would be "minimal." (ECF 66 at 13.)  The plaintiffs also argue that "any administrative inconvenience the Government would suffer is of the Government's own making." (*Id.*)

The defendant-intervenor argues that State will be harmed by entering a bridge contract with an offeror it did not select and paying higher prices for those services.  (ECF 61 at 6-7.)  The defendant-intervenor has already been deprived of the ability to perform the contract it was awarded for seven months while the bid protest was pending.

The plaintiffs dispute the defendant-intervenor's assertion that State will need to pay higher prices, as State and G4S could negotiate pricing under a bridge contract based on its incumbent pricing.

Injury to other parties weighs against injunctive relief when the defendant would be forced into a more expensive contract and the defendant-intervenor would suffer a delay in performing and profiting from its contract.  *See Telos*, 129 Fed. Cl. at 579; *CRAssociates, Inc.*, 103 Fed. Cl. at 28; *NetCentrics Corp. v. United States*, 145 Fed. Cl. 371, 377 (2019).

The defendant and defendant-intervenor have already delayed transitioning the contract for seven months while this bid protest was pending.  The plaintiffs have, in effect, already benefited for seven months from their protest.  By seeking to extend this benefit when they have not met their burden, the plaintiffs attempt to place the burden of defeating an injunction on the parties opposing the motion.  That is backwards.

The plaintiffs assert that denial of the requested injunction would benefit CGS-ORSA, which was not qualified for the award it won.  That argument proves too much because the plaintiffs were themselves not qualified for the award.  And the plaintiffs' proposal was rejected because of its price.  This argument cannot bear the weight the plaintiffs put on it.

The plaintiffs emphasize their status as the incumbent and experienced contractor.  Incumbency, however, has never guaranteed a future award of that contract or that the incumbent could hold the contract in perpetuity.  Under the new status quo, following State's award of the contract and the Court's decision upholding the award, CGS-ORSA performs the contract for security services in Angola.  State and CGS-ORSA are already transitioning the contract in reliance on that regime.  The Court refuses to disturb the status quo to the defendant and defendant-intervenor's detriment.

The injunction the plaintiffs seek would cause logistical and financial harm to the defendant and, especially, to the defendant-intervenor, which secured the award by besting the plaintiffs' proposed price.  The government's obligation to carry out procurements in compliance with the FAR is part of its cost of doing business, but that does not change the fact that State would be harmed by an injunction, even if the harm to State does not outweigh the potential

harm to the plaintiffs.  The burden is on the plaintiffs, and they have failed to make the necessary showing.

The harm from an injunction pending appeal to the defendant-intervenor outweighs the harm to the plaintiffs, as the Court would upend the status quo and exceed its discretion by essentially favoring the interests of one unqualified offeror over another unqualified offeror.  This factor of injury to other parties thus counsels against an injunction pending appeal.

### D. Public Interest

The plaintiffs argue that an injunction would further the public interest by ensuring that the procurement for security services complied with the FAR.  (ECF 52 at 8.)  In *Heritage of America, LLC v. United States*, a judge of this court explained, "Because the procurement process at issue in this case did not conform to the requirements of the FAR, it is in the public interest to take action to redo the flawed procurement and, in doing so, correct the errors that occurred in the initial procurement process."  77 Fed. Cl. 66, 80 (2007).

The defendant claims that the public interest would be harmed by an injunction because of potential harm to State, as described above.  (ECF 62 at 12.)

The defendant-intervenor argues that the public interest could best be served "by letting [State] transition to the lowest cost technically acceptable proposal."  (ECF 61 at 7.)

The public interest in this case does not favor the plaintiffs.  A stay pending appeal may promote compliance with the FAR, but only if the plaintiffs ultimately prevail in their argument on appeal that their proposal complied with FAR 52.204-7.  If the plaintiffs do not prevail, an injunction would undermine principles of fairness by allowing an ineligible bidder who was not prejudiced by the procurement the opportunity to remain under contract for services.  Because the Court has found that the plaintiffs are unlikely to prevail on appeal, this factor supports preserving the status quo.  *See NetCentrics*, 145 Fed. Cl. at 378 (holding that the public interest was "served by allowing the government to use the more efficient and less expensive contract while the matter is before the court of appeals").

The public interest weighs neither in favor of nor against injunctive relief.  Because the plaintiffs bear the burden of demonstrating the appropriateness of an injunction pending appeal, they have not prevailed on this final factor.

## IV.     CONCLUSION

Under RCFC 62(d), the plaintiffs have not demonstrated that an injunction pending appeal is appropriate.  Because State's misinterpretation of FAR 52.204-7 did not prejudice the plaintiffs, they have not shown that they are likely to succeed on the merits or that they have a substantial case on the merits.  In addition, any harm to the plaintiffs that will result from the absence of an injunction is outweighed by the harm that would result to the defendant and defendant-intervenor if an injunction were granted.

Accordingly, the Court denies the plaintiffs' motion for an injunction pending appeal. The Court will enter an order in accordance with this Memorandum Opinion.

s/ Richard A. Hertling<br>
**Richard A. Hertling**<br>
**Judge**